**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

INTERNATIONAL PAINTERS AND           *
ALLIED TRADES INDUSTRY FUND, *et al.*,
                                     *
Plaintiffs,
                                     *
v.                                                    Civil Action  JRR-21-229
                                     *
INTERIORS BY STEVE, INC., *et al.*,
                                     *
Defendants.
                            * * * * * * * * * * *

## REPORT AND RECOMMENDATION

This Report and Recommendation addresses the pending Motion for Default Judgment (the "Motion") filed by plaintiffs International Painters and Allied Trades Industry Pension Fund and Tim D. Maitland, in his official capacity as a fiduciary, (collectively, "Plaintiffs") pursuant to Rule 55(b) of the Federal Rules of Civil Procedure. ECF 21. By Order of the Court entered on February 27, 2023, this matter was referred to the undersigned magistrate judge to review the Motion and make recommendations concerning damages. ECF 24. I have reviewed the relevant filings and conducted a virtual hearing on May 23, 2023. For the reasons stated herein, the undersigned recommends that the Motion be granted, that default judgment be entered in favor of Plaintiffs, in the following amounts: **$31,509.00** in withdrawal liability; **$3,295.06** in interest, to be increased by **$6.04** each day between January 18, 2023, and the date judgment is entered; **$6,301.80** in liquidated damages; **$9,363.00** in attorney's fees; and **$677.79** in litigation costs.

## I.     FACTUAL BACKGROUND

Plaintiff International Painters and Allied Trades Industry Pension Fund (the "Pension Fund") is a trust fund whose trustees are the plan sponsor and fiduciary of the International Painters and Allied Trades Industry Pension Plan (the "Pension Plan"). Compl. ¶ 4 (ECF 1). Plaintiff Tim

D. Maitland is the Administrator of the Pension Plan and is responsible for collection of withdrawal liability for the Pension Plan under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). *Id.* ¶ 5. "The Pension Plan is a 'multiemployer plan,' 'employee benefit plan' and 'employee benefit pension plan' within the meaning of 29 U.S.C. § 1002(37), (2), (3), and 1301(a)(3). *Id.* ¶ 4.

According to the Complaint, defendant Interiors by Steve, Inc. ("Interiors by Steve") was a New Jersey corporation owned and operated by Steven Schaefer and an employer with an obligation to contribute to the Pension Plan.[1] *Id.* ¶¶ 7–9. Interiors by Steve ceased remitting contributions to the Pension Fund on or about October 30, 2010, and, shortly thereafter, ceased operations and dissolved. *Id.* ¶ 9. Defendant Ronic Wallcovering, LLC is a New Jersey limited liability company also owned and operated by Schaefer and established in March 2015. *Id.* ¶ 10. Interiors by Steve and Ronic Wallcovering, LLC (collectively, "Defendants") are under the common control of Schaefer and constitute a "single employer" under 29 U.S.C. § 1301(b). *Id.* ¶¶ 11–12.

On February 10, 2020, Plaintiffs sent a letter to Defendants stating their determination that Defendants' withdrawal liability was in the amount of $31,509 and demanding payment in accordance with a payment schedule detailed in the notice. *Id.* ¶ 13, Exh. 1. According to the Complaint, Defendants did not timely request review or arbitration of the determinations set forth in the notice. *Id.* ¶¶ 14–15. Defendants failed to make the first and second payments as demanded in the notice. *Id.* ¶ 25. On May 18, 2020, Plaintiffs sent a letter to Defendants demanding that they cure their failure to pay within 60 days to avoid default and the acceleration of their withdrawal

---

[1] Plaintiffs have attached as an exhibit to a supplemental filing in support of the Motion a copy of a collective bargaining agreement obligating Interiors by Steve to contribute to the Pension Plan. ECF 30 at 2; ECF 30-1 at 34–35, 44.

liability payments. *Id.* Defendants continued to fail to make payments toward their withdrawal liability thereafter. *Id.* ¶ 26.

## II.   PROCEDURAL HISTORY

On January 27, 2021, Plaintiffs filed suit against Defendants. ECF 1. In the Complaint, Plaintiffs seek a judgment against Defendants for the outstanding amount of withdrawal liability, interest, liquidated damages, litigation costs, and attorney's fees. *Id.* at 4–5, 7–8. Summons issued to each Defendant and was served on March 23, 2021, and proof of service was filed the next day. ECF 5; ECF 6. On June 24, 2021, Plaintiffs filed a request for entry of default. ECF 8. Defendants never filed an answer or asserted any defense in this matter. On July 2, 2021, the Clerk entered default for want of answer or other defense by Defendants and issued a notice of default to each Defendant. ECF 9; ECF 10; ECF 11. The notices of default notified Defendants that they had 30 days to file a motion to vacate the default and that if timely action was not taken, the Court would "act promptly on any pending motions for entry of default judgment, which may result in a monetary judgment against [each Defendant]." *Id.* Defendants have not made any appearance in this case and did not file any motion to vacate the entry of default within the time provided in the notices.

On January 31, 2023, Plaintiffs filed a Motion for Default Judgment (the "Motion") against Defendants pursuant to Fed. R. Civ. P. 55(b). ECF 21. Plaintiffs attached to the Motion copies of the withdrawal liability demand letters dated February 20, 2020, and May 18, 2020; Pension Plan rules and regulations; and declarations and documentation in support of Plaintiffs' computation of withdrawal liability, interest, and requested attorney's fees. On February 27, 2023, Judge Julie R. Rubin entered an Order pursuant to 28 U.S.C. § 636 and L.R. 301 referring this matter to the undersigned magistrate judge to review a default judgment "and/or mak[e] recommendations

concerning damages." ECF 24. The undersigned conducted a virtual hearing on the Motion by video teleconference with Plaintiff's counsel on May 23, 2023. Defendants did not appear at the hearing. On May 30, 2023, Plaintiffs made a supplemental filing in support of the Motion, which attached a copy of the collective bargaining agreement obligating Interiors by Steve to contribute to the Pension Plan and supplemental materials in support of Plaintiff's request for attorney's fees. ECF 30.

## III.    LEGAL STANDARD

A defendant's default must be entered when the defendant fails to plead or otherwise present a defense in a civil action "and that failure is shown by affidavit or otherwise[.]" Fed. R. Civ. P. 55(a). If the plaintiff's claim against the defaulting defendant "is for a sum certain or a sum that can be made certain by computation," and the plaintiff requests a default judgment "with an affidavit showing the amount due[,]" the clerk must enter a default judgment for that amount due, provided the defendant is "neither a minor nor an incompetent person." Fed. R. Civ. P. 55(b)(1). If the claim is not for a sum certain or ascertainable through computation, the plaintiff "must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"If the plaintiff is seeking both a sum certain, which would fall under Rule 55(b)(1), and damages that require judicial determination under Rule 55(b)(2), the entire matter, including the sum certain, must be determined under Rule 55(b)(2)." *Int'l Union of Operating Engineers, Loc. 4 v. Stanley Excavation*, 243 F.R.D. 25, 27 n.5 (D. Me. 2007) (citing *Conetta v. Nat'l Hair Care Ctrs., Inc.*, 186 F.R.D. 262, 268 (D.R.I. 1999), *aff'd on other grounds*, 236 F.3d 67 (1st Cir. 2001); *see also Meade Communities, LLC v. Walker*, Civ. No. CCB-20-200, 2020 WL 5759762, at *2 n.4 (D. Md. Sept. 28, 2020) (proceeding under Fed. R. Civ. P. 55(b)(2) where plaintiff seeks both a sum certain and an order of eviction). When a motion for default judgment includes a claim for

reasonable attorney's fees, the need for the Court to assess the reasonableness of the requested award of fees precludes entry of judgment by the clerk. *Stanley Excavation*, 243 F.R.D. at 27 n.5; *see also* 10A Charles Alan Wright & Arthur R. Miller, FED. PRAC. & PROC. § 2683 (4th ed.) ("[I]t has been held that the need to fix 'reasonable' attorney's fees prevents the clerk from entering a judgment under Rule 55(b)(1).") (citing cases).

When a plaintiff requests a default judgment, the court may conduct a hearing when necessary to "(A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *Id.* The Fourth Circuit recognizes a "strong policy that cases be decided on the merits[.]" *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 376 (4th Cir. 2013) (quoting *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 462 (4th Cir. 1993)). "However, default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party.'" *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting *SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D. Md. 2005)).

Upon review of a motion for default judgment, the court accepts as true the well-pleaded allegations in the complaint but must determine whether those allegations "support the relief sought in this action." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). "If the court finds that liability is established, it must then turn to the determination of damages." *Int'l Painters & Allied Trades Indus. Pension Fund v. Cap. Restoration & Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013) (citing *Ryan*, 253 at 780–81.) "The court must make an independent determination regarding damages and cannot accept as true factual allegations of damages." *Id.* "An allegation 'relating to the amount of damages' is not deemed admitted based on a defendant's failure to deny in a required responsive pleading." *Monge v. Portofino Ristorante*,

751 F. Supp. 2d 789, 794 (D. Md. 2010) (quoting Fed. R. Civ. P. 8(b)(6). The court may but need not conduct a hearing to determine the amount of damages; it may instead "rely on detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (citing *United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979)), *quoted in United Food & Com. Workers Unions v. Magruder Holdings, Inc.*, Civ. No. GJH-16-2903, 2017 WL 3129192, at *3 (D. Md. July 21, 2017). Pursuant to Fed. R. Civ. P. 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."

## IV.   DISCUSSION

The undersigned recommends that the Motion be granted and that the Court enter default judgment against Defendants and award Plaintiffs **$31,509.00** in withdrawal liability; **$3,295.06** in interest, to be increased by **$6.04** each day between January 18, 2023, and the date judgment is entered; **$6,301.80** in liquidated damages; **$9,363.00** in attorney's fees; and **$677.79** in litigation costs.

### A.  Liability

ERISA was enacted to promote and protect "'the interests of employees and their beneficiaries' by establishing 'minimum standards . . . assuring the equitable character of [employee benefit] plans and their financial soundness.'" *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 440 (4th Cir. 2015) (quoting 29 U.S.C. § 1001(a)). "Multiemployer pension plans, structured in accordance with ERISA, provide for the pooling of contributions and liabilities." *Penske Logistics LLC v. Freight Drivers & Helpers Loc. Union No. 557 Pension Fund*, 820 F. App'x 179, 181 (4th Cir. 2020).

To "shore up the financial stability of multiemployer pension plans," *Bd. of Trustees, Sheet*

*Metal Workers' Nat. Pension Fund v. BES Servs., Inc.*, 469 F.3d 369, 374 (4th Cir. 2006), "Congress in 1980 passed the Multiemployer Pension Plan Amendments Act (the 'MPPAA')[,]" which "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan[,]" *Plumbing Servs.*, 791 F.3d at 440 (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.,* 467 U.S. 717, 725 (1984)). "An employer owes withdrawal liability when it makes a complete or partial withdrawal from a pension plan." *Id.* (citing 29 U.S.C. § 1381(a)). "An employer's complete withdrawal occurs when an employer permanently ceases to have an obligation to contribute under the plan or permanently ceases all covered operations under the plan[.]" *Penske Logistics*, 820 F. App'x at 182 (citing 29 U.S.C. § 1383(a)). "ERISA treats all trades or businesses that are under common control as a single employer[,]" *Plumbing Servs.*, 791 F.3d at 440 (citing 29 U.S.C. § 1301(b)(1)), "and each member of the controlled group is liable for the withdrawal of any other member[,]" *Penske Logistics*, 820 F. App'x at 182 (citation omitted). When an employer withdraws from a multiemployer plan, the "plan sponsor"—the designated administrator of the plan—is required to (1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability and schedule of liability payments, and (3) demand and collect the amount of the withdrawal liability from the employer in accordance with the schedule. 29 U.S.C. §§ 1382 & 1399(b)(1).

A "default" occurs when the employer fails to make withdrawal liability payments when due and "the failure is not cured within 60 days after the employer receives written notification from the plan sponsor of such failure[.]" 29 U.S.C. § 1399(c)(5)(A). "In the event of a default, a plan sponsor may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." *Id.*

An employer who disputes the plan sponsor's assessment of withdrawal liability may submit an objection to the plan sponsor or request that the plan sponsor review any specific matter relating to its determination of the employer's liability and schedule of payments. 29 U.S.C. § 1399(b)(2)(A); *see also Plumbing Servs.*, 791 F.3d at 441. "An employer dissatisfied with the plan sponsor's response must demand arbitration within a 60-day period after the earlier of the date of the plan sponsor's notification that it has rejected the employer's request for review, or 120 days after the employer's request for review." *Id.* (citing 29 U.S.C. § 1401(a)(1)). "If . . . the employer does not pursue arbitration, the amount assessed by the plan sponsor as withdrawal liability 'shall be due and owing on the schedule set forth by the plan sponsor,' which may then 'bring an action in a State or Federal court of competent jurisdiction for collection.'" *Id.* (quoting 29 U.S.C. § 1401(b)(1)). "In such a circumstance, an employer is deemed to have waived review of all issues concerning the determination of withdrawal liability." *Id.* (citing *BES Servs.*, 469 F.3d at 375).

The allegations in the Complaint support the relief sought in this action. As alleged in the Complaint and corroborated by Plaintiff's supplemental filing, Interiors by Steve was required by the terms of a collective bargaining agreement to make contributions to the Pension Plan, a multiemployer plan, but ceased doing so on or about October 30, 2010. Compl. ¶¶ 7–9; ECF 30-1. Under common control of the same owner, Defendants constitute a "single employer" under 29 U.S.C. § 1301(b). Compl. ¶¶ 11–12. In accordance with 29 U.S.C. § 1382, Plaintiffs determined the amount of Defendants' withdrawal liability, notified Defendants of that amount by letter in February 2020, and are responsible for collecting that amount as fiduciaries for the Pension Fund. *Id.* ¶¶ 4–5, 13, Exh. 1; ECF 21-2. According to the Complaint, Defendants never made any payments toward their withdrawal liability and did not timely request review or arbitration of the determinations set forth in the notice, as permitted under 29 U.S.C. §§ 1399(b) and 1401,

respectively. Compl. ¶¶ 14–15, 25–26. By letter in May 2020, Plaintiffs notified Defendants of their failure to make payments toward their withdrawal liability, and Defendants failed to cure this failure within 60 days, which constitutes a "default" under 29 U.S.C. § 1399(c)(5). Compl. ¶¶ 25–26.

### B.  Amounts of Withdrawal Liability, Interest, and Liquidated Damages

Defendants' § 1399(c)(5) default entitles Plaintiffs to "immediate payment of the outstanding amount of [Defendants'] withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5). In a civil action brought by a multiemployer plan to enforce an employer's obligation to pay withdrawal liability, the Court must award a prevailing plaintiff the amount of the withdrawal liability, interest on that amount, and liquidated damages in an amount equal to the greater of the amount of interest or 20% of the withdrawal liability, as well as reasonable attorney's fees and litigation costs. *See* 29 U.S.C. § 1132(g)(2) (listing amounts the court shall award in a judgment in an action to enforce an employer's obligations to make contributions to a multiemployer plan under 29 U.S.C. § 1145); 29 U.S.C. § 1451(b) (providing that, in an action "to compel an employer to pay withdrawal liability," the employer's failure to pay withdrawal liability "shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)").

The calculation of Defendants' withdrawal liability is detailed in an attachment to Plaintiff's withdrawal liability notice and demand letter dated February 10, 2020. ECF 1-2 at 13; ECF 21-2 at 12. The document reflects a withdrawal liability amount of **$31,509.00** based upon the rules of the Pension Plan and contributions to the Pension Plan made by Interiors by Steve between 1998 and 2009. *Id.*

The calculation of interest owed on the amount of withdrawal liability is detailed in an attachment to the declaration of Michael O'Malley, the Pension Fund's Collections Manager. ECF 21-7. Under the rules of the Pension Plan, the interest rate is determined "at the rate of underpayment of federal income taxes under [Internal Revenue Code §] 6621." ECF 21-4 at 93; *see also* ECF 21-5 at 2 (O'Malley citing Pension Plan rules for interest rate); 29 U.S.C. § 1132(g)(2) (interest "determined by using the rate provided under the plan, or, if none, the rate prescribed under [26 U.S.C. § 6621]"). The applicable interest rate on the withdrawal liability of $31,509.00 results in a total amount of **$3,295.06** in interest that accrued between April 10, 2020, (the date of Defendants' first missed payment) and January 17, 2023. ECF 21-7. Interest has continued to accrue in an amount of **$6.04** each day since January 18, 2023. ECF 21-5 at 2.

Pursuant to 29 U.S.C. § 1132(g)(2)(C), the amount of liquidated damages in this case is determined by the greater amount of the interest on withdrawal liability or 20% of withdrawal liability. Twenty percent of the $31,509.00 withdrawal liability is $6,301.80, which is greater than the amount of interest currently owed. The undersigned finds that Plaintiffs are therefore entitled to liquidated damages in the amount of **$6,301.80**.

Thus, the undersigned recommends that the default judgment entered in this case include awards of **$31,509.00** in withdrawal liability; **$3,295.06** in interest, to be increased by **$6.04** each day between January 18, 2023, and the date judgment is entered; and **$6,301.80** in liquidated damages.

### C.  Attorney's Fees and Costs

Plaintiffs request an award of reasonable attorney's fees and litigation costs. In a civil action "to compel an employer to pay withdrawal liability," 29 U.S.C. § 1451(b), where "a judgment in favor of the plan is awarded," the court must to award "reasonable attorney's fees and

costs of the action, to be paid by the defendant[,]" 29 U.S.C. § 1132(g)(2)(D). Courts in this district apply the lodestar method to determine a reasonable award of attorney's fees under § 1132(g). *See Cap. Restoration & Painting*, 919 F. Supp. 2d at 688; *Trustees of Nat'l Automatic Sprinkler Indus. Pension Fund v. Life Safety Engineered Sys., Inc.*, Civ. No. TDC-18-248, 2018 WL 4784615, at *6–7 (D. Md. Oct. 4, 2018) (report and recommendation adopted on Oct. 22, 2018); *Nat'l Elec. Benefit Fund v. Wire to Water Elec. of New York, Inc.*, Civ. No. TDC-19-3003, 2020 WL 1933625, at *5–8 (D. Md. Apr. 21, 2020) (report and recommendation adopted on May 8, 2020). The lodestar figure is computed by multiplying "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation[.]" *Cap. Restoration & Painting*, 919 F. Supp. 2d at 688 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

"In deciding what constitutes a 'reasonable' number of hours and rate," the court is required to consider factors adopted by the U.S. Court of Appeals for the Fourth Circuit from the Fifth Circuit decision in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (quoting *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). Additionally, guidance in determining the reasonableness of an hourly rate is provided in Appendix B to the Local Rules, titled "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases" (the "Local Guidelines"), which

includes a listing of ranges of hourly rates on a sliding scale based upon an attorney's years of experience that are deemed "presumptively reasonable for lodestar calculations" in this district. *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 412 (D. Md. 2014).

Here, Plaintiffs request an award of attorney's fees and costs in the total amount of $21,964.58. This amount consists of $15,647.50 in fees incurred by the law firm Jennings Sigmond, P.C., $4,959.50 in fees incurred by the law firm Tucker Arensberg, P.C., and expenses totaling $677.79. In support of this request, they offer the billing records of the two law firms detailing time spent and fees incurred for various tasks performed by each firm during its representation of Plaintiffs. ECF 21-6; ECF 21-9. Plaintiffs also attach to the Motion declarations of Neil J. Gregorio of Tucker Arensberg and Michael O'Malley, a collections manager of the Pension Fund whose duties include reviewing and paying invoices from the Pension Fund's legal counsel. ECF 21-5; ECF 21-8. In a supplemental filing made after the hearing on May 23, 2023, Plaintiffs provide a declaration of Richard J. De Fortuna, an attorney with Jennings Sigmond, P.C., dated November 16, 2021, which was submitted in a separate lawsuit filed by Plaintiffs in this district (*Int'l Painters & Allied Trades Indus. Pension Fund v. I. Losch, Inc.*, No. 1:19-cv-03492-BPG). ECF 30-2 at 48–56. The materials submitted in support of Plaintiffs' request do not address all of the *Johnson* factors, but sufficient information is provided to make an assessment of those factors most pertinent to determining the reasonableness of the time and hourly rates claimed.

### 1. Hourly Rates

#### a. Jennings Sigmond, P.C.

Between January 2020 and February 2022, Plaintiffs were represented in this matter by the law firm Jennings Sigmond, P.C. Plaintiffs request that the judgment in this case include an award of attorney's fees for Jennings Sigmond totaling $15,647.50. ECF 21-5 at 2. Billing records

attached to Mr. O'Malley's declaration reflect six timekeepers at Jennings Sigmond whose time was charged at hourly rates of either $120 or $375. ECF 21-6. Mr. De Fortuna's declaration summarizes the training and experience of five of the six timekeepers listed in Jennings Sigmond's billing records for the instant case, including his own training and experience:

(1)     Mr. De Fortuna was admitted to the Bar of Pennsylvania in November 2000. ECF 30-2 at 52. Since 2002, his practice has concentrated on matters relating to labor, employment, and employee benefits. *Id.* In the instant case, Mr. De Fortuna (with initials RJD) billed an hourly rate of $375. ECF 21-6.

(2)     Kent G. Cprek joined Jennings Sigmond as an attorney in 1984 and his practice has concentrated on the representation of employee benefit plans, including multiemployer plans. ECF 30-2 at 49–50. He is admitted to practice before numerous federal courts of appeals and district courts and has taught and written on various topics relating to employee benefit plans, including withdrawal liability for multiemployer pension benefit plans. *Id.* In the instant case, Mr. Cprek (with initials KGC) billed an hourly rate of $375. ECF 21-6.

(3)     Judith Ann Sznyter has practiced law since 2004 and is admitted to practice before several federal courts of appeals and district courts. ECF 30-2 at 51. In the instant case, Ms. Sznyter (with initials JAS) billed an hourly rate of $375. ECF 21-6.

(4)     Nathan Foley was a paralegal with 18 years of experience, having joined Jennings Sigmond in June 2015. ECF 30-2 at 54. His experience includes "performing case investigation, corporate research, damage calculations, document management, and database administration." *Id.* In the instant case, Mr. Foley (with initials NF) billed an hourly rate of $120. ECF 21-6.

(5)     Nicholas A. Fore was a paralegal who joined Jennings Sigmond in November 2019. ECF 30-2 at 54. His experience includes electronic filing, preparation of pleadings, and legal research. *Id.* In the instant case, Mr. Fore (with initials NAF) billed an hourly rate of $120. ECF 21-6.

The undersigned finds the hourly rates billed for each of the foregoing attorneys and paralegals to be reasonable and within the applicable ranges set forth in the Local Guidelines.[2]

### b.  Tucker Arensberg, P.C.

Tucker Arensberg attorneys have been representing Plaintiffs in this matter since September 2022. Plaintiffs request that the judgment in this case include an award of attorney's fees for Tucker Arensberg totaling $4,959.50. Billing records attached to Mr. Gregario's declaration reflect three attorneys and one paralegal at Tucker Arensberg whose time was charged at hourly rates of ranging from $185 to $325. Mr. Gregario's declaration summarizes the training and experience of the four timekeepers, including his own training and experience:

(1)     Mr. Gregorio is a shareholder in Tucker Arensberg, leads the firm's ERISA practice group, represents numerous multiemployer funds, and has primary responsibility for "the dozens of withdrawal liability cases [the] firm handles across the country." ECF 21-8 at 1–2. He has approximately 20 years of experience in ERISA litigation and has provided several presentations on various ERISA litigation topics. *Id.* at 2. Mr. Gregorio charged an hourly rate of $325 in this matter.

---

[2] The Jennings Sigmond billing records lists a sixth timekeeper by the initials "HM," who billed 2.3 hours at an hourly rate of $120 for work performed on a motion for default judgment. ECF 21-6 at 2. No information is provided to describe this timekeeper's training or experience. The undersigned finds that the fees attributed to "HM" are not recoverable due to the lack of evidentiary support. For reasons explained in Part IV.C.3 *infra*, the undersigned recommends excluding fees incurred by Jennings Sigmond for its work on their motion for default judgment, which was never filed. The fees attributed to "HM" are among those incurred on the unfiled motion for default judgment.

(2)      Brian A. Pepicelli is another Tucker Arensberg shareholder whose practice is focused on ERISA litigation. ECF 21-8 at 3. Mr. Pepicelli graduated from law school in 2013 and joined Tucker Arensberg in May 2018. Id. He charged an hourly rate of $325 in this matter.

(3)      Patrick Kukalis is an attorney who joined Tucker Arensberg in October 2022 after a judicial clerkship, having graduated from law school in 2021, and is now a member of the firm's ERISA practice group. ECF 21-8 at 3. An hourly rate of $215 was charged for Mr. Kukalis's work.

(4)      Lori L. Buckreis is a paralegal who has been with Tucker Arensberg for over 20 years and worked on "hundreds of ERISA cases" for clients of the firm. ECF 21-8 at 4. The hourly rate charged for Ms. Buckreis was $185.

The undersigned finds the hourly rates billed for each of the foregoing three attorneys to be reasonable and within the applicable ranges set forth in the Local Guidelines.

However, the $185 hourly rate for the paralegal, Ms. Buckreis, exceeds the range set forth in the Local Guidelines, which is $95 to $115 per hour. Tucker Arensberg's billing records indicate that Ms. Buckreis spent 19.7 hours performing various tasks to include receiving direction from attorneys, conducting investigative research on Defendants, making electronic court filings, and revising the motion for default judgment and supporting documents. ECF 21-9. Plaintiffs do not provide any information or evidence to show that $185 is a customary hourly rate for the work Ms. Buckreis performed as a paralegal.[3] No justification is offered for any hourly rate exceeding the

---

[3] "Fees for work performed by paralegals are generally recoverable, but only to the extent that they reflect tasks traditionally performed by an attorney and for which the attorney would customarily charge the client." *Kabore v. Anchor Staffing, Inc.*, Civ. No. L-10-3204, 2012 WL 5077636, at *4 (D. Md. Oct. 17, 2012) (citing *Hyatt v. Barnhart*, 315 F.3d 239, 255 (4th Cir. 2002). The undersigned finds that the foregoing tasks performed by Ms. Buckreis are of the sort traditionally performed by attorneys and therefore are recoverable in an award of attorney's fees.

high end of the range reflected in the Guidelines for a paralegal's work. The undersigned recommends that the fee award in this case reflect the hourly rate of $115 for the 19.7 hours of time charged for Ms. Buckreis's work instead of the $185 rate charged. Applying the $115 hourly rate would result in a reduction in Plaintiffs' requested fees by $1,379.

### 2. Fees Incurred Before Litigation

The billing records for the Jennings Sigmond firm reflect work performed by two attorneys and a paralegal before this suit was filed, including reviewing and revising the employer withdrawal liability assessment and demand letter in February 2020 and the withdrawal liability default letter in May 2020. ECF 21-6 at 1. For reasons explained below, the undersigned recommends excluding some of these pre-litigation fees from the attorney's fee award in this case.

In *Rego v. Westvaco Corp.*, the Fourth Circuit interpreted "action" in 29 U.S.C. § 1132(g) to exclude pre-litigation administrative proceedings and joined other federal courts of appeals in holding "ERISA attorney's fees to be categorically unavailable for expenses incurred while exhausting administrative remedies." 319 F.3d 140, 150 (4th Cir. 2003) (citing *Cann v. Carpenters' Pension Trust Fund for N. Cal.*, 989 F.2d 313, 316 (9th Cir. 1993), among other cases). *See also Kahane v. UNUM Life Ins. Co. of Am.*, 563 F.3d 1210, 1215 (11th Cir. 2009); *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 313 (3d Cir. 2008); *Parke v. First Reliance Standard Life Ins. Co.*, 368 F.3d 999, 1010–11 (8th Cir. 2004); *Peterson v. Cont'l Cas. Co.*, 282 F.3d 112, 121 (2d Cir. 2002). Importantly, however, the Fourth Circuit recognized that the term "action" as used in 29 U.S.C. § 1132(g) "need not necessarily mean litigation in district court[.]" 319 F.3d at 150. Generally, districts courts have not applied *Rego*'s limitation on fee awards in ERISA cases in a way to exclude all pre-litigation fees and costs. *See Bryner v. E.I. DuPont de Nemours & Co.*, 950 F. Supp. 2d 840, 849 (E.D. Va. 2013); *McIntyre v. Aetna Life Ins.*

*Co.*, 586 F. Supp. 2d 638, 640 (W.D. Va. 2008). In *McIntyre*, for example, the district court permitted an award of fees for tasks performed before filing suit but nonetheless "inextricably . . . linked" to litigation in court, such as "securing client consent to proceed and preparing the pleadings and other papers necessary to institute litigation." 586 F. Supp. 2d at 640. *Cf. Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emps.*, 571 U.S. 177, 189 (2014) ("[S]ome of the services performed before a lawsuit is formally commenced by the filing of a complaint are performed 'on the litigation[]'" in that "they are 'both useful and of a type ordinarily necessary to advance the ... litigation' in question[,]" such as "drafting of the initial pleadings and the work associated with the development of the theory of the case.") (quoting *Webb v. Dyer County Bd. of Ed.,* 471 U.S. 234, 243 (1985)).

In *United Plant & Prod. Workers Loc. 175 Pension Fund by Kilkenny v. J. Pizzirusso Landscaping Corp.*, the court drew a distinction between recoverable pre-filing fees "incurred in connection with tasks that were ultimately useful for the litigation[]" and "pre-filing collection and calculation fees incurred in determining . . . withdrawal liability [a]ssessments[,]" which the court deemed "not recoverable in this case[.]" No. 20-CV-2527-RJD-CLP, 2022 WL 4139160, at *19 (E.D.N.Y. Aug. 9, 2022), *report and recommendation adopted*, No. 20-cv-2527-RJD-CLP (E.D.N.Y. Aug. 29, 2022). The court reasoned that "[a]lthough the [a]ssessments were 'necessary' to advance the litigation in the sense that they provided the basis for establishing defendant's withdrawal liability and determining the amounts due, plaintiff would have been required to incur these fees regardless of whether it eventually brought suit." *Id.* If the plaintiff could recover an award for attorney's fees for this work, "claimant could contend that, although performed [before litigation commenced], all of the work was really undertaken in anticipation of later litigation." *Id.*

(quoting *Hermann v. Aetna Life Ins. Co.*, No. 14 CV 9302, 2015 WL 13917123, at *5 (C.D. Cal. Nov. 23, 2015)).

The undersigned is persuaded by the court's reasoning in *J. Pizzirusso Landscaping* and recommends denying an award of fees claimed for Jennings Sigmond's pre-litigation work on the assessment of withdrawal liability in this case and efforts to collect withdrawal liability from Interiors by Steve between January and May 2020. My review of Jennings Sigmond's billing records indicates that work preparing this litigation did not begin until June 17, 2020, when a conference was held regarding the Complaint. *See* ECF 21-6 at 1. Therefore, the undersigned recommends excluding from Plaintiffs' requested $15,649.50 in attorney's fees for Jennings Sigmond the fees incurred prior to June 17, 2020, which amount to $1,416 for five hours of work on Plaintiffs' efforts to collect withdrawal liability before filing suit.

### 3. Fees for Duplicative Work

The billing records for both the Jennings Sigmond and Tucker Arensberg firms reflect charges for significant amounts of time performing the duplicative task of preparing a motion for default judgment. Jennings Sigmond attorneys and paralegals spent 27.9 hours and incurred $9,876.00 in fees working on a motion for default judgment that, according to Plaintiff's current counsel, was never filed.[4] A Tucker Arensberg attorney and paralegal spent a total of 17.7 hours on the same task, preparing and filing the instant motion for default judgment. The undersigned finds that the request for fees for work the motion prepared by Jennings Sigmond is not reasonable, considering that their version of the motion was never filed, and Tucker Arensberg separately

---

[4] Plaintiffs' current counsel stated at the hearing on May 23, 2023, that the motion prepared by Jennings Sigmond was never filed, that the firm is no longer active, and that the instant Motion was prepared by current counsel. The extent to which the work Plaintiffs' former counsel was adopted and used in the instant Motion is not known to the undersigned and was not known to Plaintiffs' counsel at the time of the hearing.

charged fees for performing the same task. Therefore, the undersigned recommends that the 27.9 hours of fees incurred by Jennings Sigmond working on its motion for default judgment (totaling $8,451.00) be deducted from Plaintiff's requested award of fees. *See Goodwin v. Metts*, 973 F.2d 378, 383–84 (4th Cir. 1992) (affirming downward adjustment of fee award due, in part, to duplication of effort between old and new counsel, as well as over-staffing); *In re Conklin*, 946 F.2d 306, 316 (4th Cir. 1991) (affirming district court fee award wherein attorney hours were "reduced by the number of hours spent in duplicative and repetitive work" among other reductions); *Spell v. McDaniel*, 852 F.2d 762, 769 (4th Cir. 1988) ("We have already observed that it is inappropriate to charge defendants for duplicative endeavors and overkill on the part of newly acquired counsel.").

#### 4.   Attorney's Fees Awards in Similar Cases

In the Motion, as noted *supra*, Plaintiffs request $15,647.50 in attorney's fees incurred by Jennings Sigmond and $4,959.50 in attorney's fees incurred by Tucker Arensberg, which total $20,607.00. Making the reductions recommended by the undersigned in the foregoing sections of this Report and Recommendation, which total $11,246, would result in a remaining amount of fees totaling $9,361. In addition to the reasons provided in the foregoing sections, the recommended reductions in Plaintiff's requested fees is justified by awards of attorney's fees made in similar cases upon default judgment.

Plaintiffs have not provided any examples of attorney's fee awards in similar cases. What examples of similar cases in this circuit the undersigned has found through his own research show Plaintiffs' requested $20,607.00 in fees to be significantly out of proportion with fees awarded in similar cases upon default judgment. *See Life Safety Engineered Sys.*, 2018 WL 4784615, at *6– 7, *report and recommendation adopted*, 2018 WL 6819513 (awarding attorney's fees and costs in

an action for default judgment regarding withdrawal liability under ERISA in a total amount of $2,575.00); *Cap. Restoration & Painting*, 919 F. Supp. 2d at 689 (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $4,017.48); *Nat'l Elec. Benefit Fund v. Allran/Hemmer Elec., LLC*, No. GJH-16-1184, 2017 WL 1273922, at *5 (D. Md. Jan. 6, 2017) (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,535.40); *National Elec. Benefit Fund v. NRG Mgmt. Solutions, Inc.* TDC-19-254 (D. Md. Oct. 15, 2019), ECF No. 18 (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,625.30); *Nat'l Elec. Benefit Fund v. United Network Systems, Inc.*, Civ. No. GJH-17-27, 2017 WL 5056418, at *4 (D. Md. Oct. 30, 2017) (awarding attorneys' fees and costs in an action for default judgment regarding unpaid contributions under ERISA in an amount of $1,339.30); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Raka Gen. Sheet Metal, Inc.*, No. 121CV01369LMBIDD, 2022 WL 3337750, at *3–4 (E.D. Va. June 3, 2022), *report and recommendation adopted*, No. 121CV01369LMBIDD, Dkt. 12 (E.D. Va. June 23, 2022) (awarding attorney's fees and costs in an action for default judgment regarding withdrawal liability under ERISA in an amount of $3,347.48); (awarding attorney's fees and costs in an action for default judgment regarding withdrawal liability under ERISA in a total amount of $2,840); *Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Burris Constr. Co., LLC*, No. 119CV1499RDATCB, 2020 WL 2212507, at *6–7 (E.D. Va. Feb. 25, 2020), *report and recommendation adopted*, No. 119CV1499RDATCB, 2020 WL 2194025 (E.D. Va. May 6, 2020) (awarding attorney's fees and costs in an action for default judgment regarding withdrawal liability under ERISA in a total amount of $6,235.22). !!

The only information offered by Plaintiffs at the hearing on May 23, 2023, to explain to substantial disparity between their request for fees in this case and those requested and awarded in similar cases was that the transitory nature of Defendants' business made them particularly difficult to track. The undersigned is not persuaded that any additional difficulty Plaintiffs had identifying and locating Defendants is adequate to explain the high amount of fees requested in this case. Plaintiffs offer no information or evidence to suggest that this case involved particularly novel or difficult questions of fact or law or that the high amount of fees requested here is justified by the withdrawal liability amount in this case. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009) (*Johnson* factors 2 and 8).

The reduction in fees recommended in this Report and Recommendation results in a remaining fee award of **$9,363.00**.

### 5. Litigation Costs

Mr. O'Malley states in his declaration that the Pension Fund was billed and has paid $677.79 in expenses incurred by Jennings Sigmond. ECF 21-5 at 2. Jennings Sigmond's billing records reflect $677.79 in litigation expenses, including postage charges and filing fees. The undersigned recommends that the award of attorney's fees and costs include **$677.79** in litigation costs.

## V.   CONCLUSION

In sum, the undersigned recommends the following:

1.      Grant the Motion for Default Judgment (ECF 21); and

2.      Enter default judgment against defendants Interiors by Steve and Ronic Wallcovering, LLC, jointly and severally, and in favor of plaintiffs International Painters and

Allied Trades Industry Pension Fund and Tim D. Maitland, in his official capacity as a fiduciary (collectively, "Plaintiffs");

    3.    Award Plaintiffs a total amount of withdrawal liability amount of **$31,509.00** in withdrawal liability; **$3,295.06** in interest, to be increased by **$6.04** each day between January 18, 2023, and the date judgment is entered; **$6,301.80** in liquidated damages; **$9,363.00** in attorney's fees; and **$677.79** in litigation costs.[5]

Any objections to this Report and Recommendation must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and L.R. 301.5(b).


                                               /S/

Date: July 11, 2023.                                Matthew J. Maddox
                                             United States Magistrate Judge

---

[5] Pursuant to the Servicemembers' Civil Relief Act ("SCRA"), before a court may enter a default judgment in favor of a plaintiff, the plaintiff must "file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit[.]" 50 U.S.C. § 3931(b)(1)(A). In his declaration, Mr. Gregorio attests that "Defendants are not in the military service of the United States[,]" as required by the SCRA.